UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PINNACLE FOODS GROUP, LLC,

        Plaintiff,                        Case No. 15-cv-12413
                                                                 Hon. Mark A. Goldsmith

vs.

UNITED DAIRY AND BAKERY
WORKERS LOCAL 87,

        Defendant.
_____/

**OPINION & ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 14) AND
DENYING PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD (Dkt. 13)**

       This is an arbitration award review case, involving the rate at which certain vacation and holiday hours should be paid pursuant to the parties' collective bargaining agreement. In light of the highly deferential standard of review that a district court must apply to a labor arbitrator's award, Plaintiff's motion to vacate the arbitrator's award is denied, and Defendant's motion for summary judgment seeking enforcement of the award is granted.

**I. BACKGROUND**

       Plaintiff is an employer in Imlay City, Michigan, and Defendant is a labor union that represents some of Plaintiff's employees. At all relevant times, the parties were bound by their Collective Bargaining Agreement ("CBA") (Dkt. 1-2). The current dispute involves three grievances brought under the arbitration clause of the CBA, each alleging that vacation days and/or "unworked" holidays that were taken after 40 hours were actually worked in a workweek, should, under the CBA, be paid at an overtime rate. The specific grievances themselves illustrate the contours of the issue.

1

The first grievance ("Grievance 456") came from an employee who had worked 40 hours between Monday through Friday during the week of October 29, 2012. The employee was also scheduled to work Sunday, November 4, 2012, which fell within the same pay period. On that day, the employee did not work, but instead took an "emergency vacation day." Plaintiff paid that employee at straight time for the vacation day, while Defendant contends that he should have received overtime for the vacation day. Compl. ¶ 9 (Dkt. 1).

The second grievance ("Grievance 460") came from an employee who worked 10 hours on Monday, February 4, 2013, and on Tuesday, February 5, 2013. He thereafter took three 8-hour vacation days on Wednesday, February 6; Thursday, February 7; and Friday, February 8. This adds up to 44 hours. Plaintiff paid this employee at straight time for all 44 hours, but Defendant contends that he should have received overtime pay for the last 4 hours of his Friday, February 8 vacation day. Id. ¶ 10.

The third grievance ("Grievance 555") is a group grievance. It asserts that, on Good Friday, March 29, 2013, "all employees should have been paid at the premium rates where applicable." Defendant asserts that if an employee's combined working time Monday through Thursday, together with the unworked holiday hours on Friday, exceeds 40 hours, the employee is entitled to overtime for the holiday hours in excess of 40. Id. ¶ 11.

Plaintiff, on the other hand, believes that the CBA requires an employee to be physically present at the workplace for "hours worked" in excess of 40 in order to receive overtime pay for those hours.

Pursuant to Article 6 of the CBA, unresolved grievances culminate in binding arbitration. Id. ¶ 7. After Plaintiff rejected the above-described grievances, id. ¶ 8, the issues proceeded to

arbitration in accordance with that provision, see id. ¶ 14. The relevant provisions of the CBA are as follows (all emphases added):

- The arbitrator "shall have no power to add on, subtract from, disregard, alter, or modify any of the terms of the Agreement." Art. 6, § 1(2).

- "Vacation pay shall be computed <u>on the basis of the employee's regular bid job straight time hourly rate</u> multiplied by the number of hours the employee is entitled to." Art. 9, § 2(c).

- "Regular full time employees shall receive <u>eight (8) hours holiday pay (at straight time)</u> and regular full-time employees shall receive <u>eight (8) hours holiday pay (at straight time)</u> for each of the following holidays. (Regular full-time employees assigned to a four (4) day, ten (10) hour shift schedule will receive ten (10) hours holiday pay at straight time for holidays which fall within their regular work week of Monday through Thursday)." [Listing 11 holidays.] Art. 10, § 1.

- "Holidays not worked <u>shall be considered as hours worked</u> in <u>computation of overtime</u> and any other contractual benefits." Art. 10, § 2(d).

- "It is agreed that forty (40) hours shall constitute a work week and that <u>all hours worked</u> in excess of forty (40) hours in any regular work week shall be considered as overtime and employees shall be paid at the rate of time and one-half their regular rate for working such overtime hours." Art. 11, § 1.

- "<u>Time and one-half an employee's regular hourly rate shall be paid for all work performed</u> in a "work week" based on the below schedule. Time and one-half shall also be paid for all work performed on holidays.

    - 40.00 Hours – Straight Time
    - 40.02 Hours – Time and One-Half (.02 = 1 minute)
    - 55.02 Hours – Double Time

  (a) If an employee is off work <u>any time</u> during their workweek on a contractual leave or benefit, such time <u>will be counted as hours worked</u> in <u>computation of overtime</u>, (i.e. Jury Duty, Bereavement, Negotiations, Union Business, Vacation, Military Leave, FMLA, or Workers' Compensation)." Article 11, § 5.

3

On the merits, the arbitrator held that the employees were entitled to be paid at an overtime rate for the vacation and holiday time at issue. Id. ¶ 16.[1] The arbitrator focused on three provisions and, reading them together, held for the Union. Arb. Op. at 15-16 (Dkt. 1-1). Introducing his discussion on the merits, the arbitrator first established the premise that "[e]veryone agrees unworked holidays and vacation leave days are paid at straight time." Id. at 15. The arbitrator framed the issue as, "the pay entitlement for the remaining hours in the week," id., i.e., those hours payable after an employee had logged 40 hours, either physically at work or as vacation or holiday time. The arbitrator identified an "obvious point of contention" in Article 10, § 2 of the CBA, which provides:

> Holidays not worked shall be <u>considered as hours worked in computation of overtime</u> and any other contractual benefits.

(Emphasis added.) The arbitrator also highlighted Article 11, § 5(a), which provides:

> If an employee is off work any time during their workweek on a contractual leave or benefit, such time will be <u>counted as hours worked in computation of overtime</u>.

(Emphasis added.)

Before the arbitrator, Plaintiff argued that the phrase "computation of overtime" pertains to "<u>computing</u> whether the 40 hour threshold for overtime has been met." See Arb. Op. at 16 (quoting Plaintiff's argument (emphasis in original)). Rejecting this, the arbitrator stated that "the CBA does not restrict the extent which the referenced time will be counted as hours worked. The provision [Article 11, § 5(a)] states 'any time during their workweek . . . will be counted as

---

[1] Whether the merits of the claim were arbitrable comprised the bulk of the arbitrator's decision. Arb. Op. at 12-15 (Dkt. 1-1). Plaintiff's motion does assert that Defendant "missed the deadline" for filing each of the three grievances. Pl. Mot. at 4. However, this claim appears nowhere in the complaint, and the substantive portion of Plaintiff's motion only discusses the merits. Plaintiff no longer argues that the grievances were untimely or not subject to arbitration. Therefore, Plaintiff has conceded these issues.

hours worked.'" Id. For support, the arbitrator quoted Article 11, § 1 of the CBA, which states that "all hours worked in excess of forty (40) hours in any regular work week shall be considered as overtime . . . ." (Emphasis added.) These three provisions, read in tandem, were interpreted by the arbitrator to require payment of overtime for all hours in excess of 40 in a given week, regardless of whether any of the overtime hours were vacation or holiday time.

The arbitrator then turned to Plaintiff's attempt to reconcile the CBA with Plaintiff's interpretation. Article 11, § 5 provides that "[t]ime and one-half an employee's regularly hourly rate shall be paid for all work performed in a 'work week.'" (Emphasis added.) As interpreted by the arbitrator, "[Plaintiff's] argument runs that a vacation day at the end of a 40 hour week is not 'work performed.'" Arb. Op. at 16. Yet, noted the arbitrator, "[a] vacation day early in the week is counted as 'work performed' for purposes of overtime entitlement," even according to Plaintiff. Id. ("[Plaintiff] characterizes the provision 'computation of overtime' as one which only pertains to 'computing whether the 40 hour threshold for overtime has been met.'" (emphasis in original)).[2] With that in mind, he concluded that Article 11, § 5 "does not distinguish a time occurrence as argued by [Plaintiff]. It necessarily follows that a vacation day [or holiday] at the end of the week must be counted as 'work performed' in a work week in the same manner as a vacation day at an earlier time in the week." Id. Thus, the arbitrator — building on Plaintiff's concession that mid-week vacation and holiday time is "work performed" for overtime purposes — concluded that vacation time and holiday time is "work performed" for overtime purposes, no matter when the vacation or holiday time was taken during a work week.

---

[2] For example, under Plaintiff's interpretation of the CBA, a 48-hour week in which hours 0 through 8 were vacation hours would still warrant 8 hours of overtime pay for hours 41 through 48; in that scenario, the mid-week vacation time is merely "computed" as part of the 40-hour threshold. However, according to Plaintiff, a 48-hour week in which hours 41 through 48 were vacation hours would not warrant overtime pay, because those hours were not needed to "compute" whether the 40-hour threshold had been met.

5

Although the arbitrator acknowledged Plaintiff's argument that certain CBA provisions suggest that holiday and vacation pay should be paid at "straight time," id. at 11-12, he did not explicitly elaborate on that argument in his decision on the merits. Accordingly, Plaintiff claims that the arbitrator exceeded his authority by "disregard[ing]" those provisions of the CBA.

For this reason, Plaintiff filed the instant action and a motion to vacate the arbitration award (Dkt. 13). Defendant filed a counterclaim and cross-motion for summary judgment seeking enforcement of the award (Dkt. 14).

## II. STANDARD OF DECISION

Because both motions are summary judgment motions, the standard under Federal Rule of Civil Procedure 56 applies. Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. DISCUSSION

### A. Legal Background

Judicial review of an arbitrator's decision is "extremely limited." Int'l Union v. Hurd Corp., 7 F. App'x 329, 333 (6th Cir. 2001). As explained by the Supreme Court: "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987). Courts must uphold an arbitrator's award "so long as it draws its essence from the collective bargaining agreement." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960). In other words, as long as "an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he

committed serious error does not suffice to overturn his decision." Major League Baseball Players Assoc. v. Garvey, 532 U.S. 504, 509 (2001).

While an arbitrator may not "ignore the plain language of the contract," "a court should not reject an award on the ground that the arbitrator misread the contract." Misco, 484 U.S. at 38. And "a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one." W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 764 (1983); see also Exxon Shipping Co. v. Exxon Seamen's Union, 993 F.2d 357, 360 (3d Cir. 1993) ("As a general rule, [courts] must enforce an arbitration award if it was based on an arguable interpretation and/or application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination or if it reflects manifest disregard of the agreement, totally unsupported by principles of contract construction."); Int'l Truck & Engine Corp. v. United Steel Workers of Am., Local 3740, 294 F.3d 860, 861 (7th Cir. 2002) ("Only if 'there is no possible interpretive route to the award, so [that] a noncontractual basis can be inferred,' may the award be set aside." (quoting Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc., 935 F.2d 1501, 1506 (7th Cir. 1991)).

The Sixth Circuit has instructed courts in this circuit to consider the following questions in determining whether an arbitrator's award should be upheld:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"?

Mich. Family Res., Inc. v. Serv. Emps. Int'l Union Local 517M, 475 F.3d 746, 753 (6th Cir. 2007). These are considered questions of "procedural aberration." Id. "So long as the arbitrator

does not offend any of [the above] requirements, the request for judicial intervention should be resisted even though the arbitrator made 'serious,' 'improvident' or 'silly' errors in resolving the merits of the dispute." Id. And regarding the last question of the Michigan Family Resources framework — whether the arbitrator was "arguably construing or applying the contract" — doubts on the issue should be resolved in favor of enforcement of the arbitrator's decision:

> [Courts] cannot ignore the specter that an arbitration decision could be so ignorant of the contract's plain language as to make implausible any contention that the arbitrator was construing the contract. An interpretation of a contract thus could be so untethered to the terms of the agreement . . . that it would cast doubt on whether the arbitrator indeed was engaged in interpretation. Such an exception of course is reserved for the rare case. For in most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will presume that the arbitrator was doing just that.

Id. (citations, brackets, and quotation marks omitted) (emphasis added).

To the extent that a court examines a collective bargaining agreement, "traditional" or "ordinary" principles of contract law — as opposed to state law — apply. See, e.g., M & G Polymers USA, LLC v. Tackett, 135 S. Ct. 926, 933 (2015).

**B. Application**

Here, the nature of Plaintiff's complaint implicates the question whether the arbitrator was "even arguably construing" the CBA. Major League Baseball Players Assoc., 532 U.S. at 509. When a party alleges that an arbitrator exceeded his authority, courts should consider "whether the language of the contract at hand is sufficiently clear so as to deny the arbitrator the authority to interpret the agreement as he did." Bruce Hardwood Floors v. S. Council of Indus. Workers, 8 F.3d 1104, 1108 (6th Cir. 1993). Therefore, despite the sacrosanctity of the

arbitrator's interpretation of the contract, this Court must perform at least some superficial appraisal of the merits of the arbitrator's decision in order to conduct its narrow review into whether the arbitrator can be said to have interpreted the CBA. See, e.g., Mich. Family Res., 475 F.3d at 754-756; Int'l Brotherhood of Teamsters, Local 519 v. United Parcel Serv., Inc., 335 F.3d 497, 506-507 (6th Cir. 2003). If the arbitrator could possibly have reached the result that he did without ignoring Article 9, § 2, and Article 10, § 1 of the CBA, his decision must be upheld — even if it is founded upon "serious" interpretive error. Because the arbitrator's decision here does not conflict with the CBA, such that his decision only makes sense if he ignored certain parts of the CBA, the Court affirms the arbitration award and holds for Defendant.

Plaintiff argues that the arbitration award should be vacated, because the arbitrator ignored certain provisions, thereby nullifying them. Specifically, Plaintiff claims that "nowhere in Arbitrator Girolamo's 'Discussion and Findings' is any reference to the language providing that vacation is paid at the 'straight hourly rate' (Article 9, § 2, p. 10) or that holidays are paid 'at straight time' (Article 10, § 1, p. 12)." Pl. Mot. at 13 (emphasis in original). Accordingly, Plaintiff claims that the arbitrator ignored those provisions, violating his duties under the CBA.

Defendant, on the other hand, seeks to establish that the arbitrator did, in fact, consider all pertinent sections of the CBA. It notes that the arbitrator explicitly listed both Article 9, § 2, and Article 10, § 1, as provisions the parties consider relevant. The arbitrator further cited both provisions in his accurate summary of Plaintiff's argument. Although the arbitrator did not cite these provisions in his analysis, he did state that he gave "careful consideration to all . . . arguments submitted by the Parties, even though the Opinion herein may not specifically reference each and every one of the above." Def. Resp. at 10 (Dkt. 17) (quoting Arb. Op. at 4). Finally, argues Defendant, the arbitrator implicitly acknowledged, rather than ignored, Article 9,

9

§ 2, and Article 10, § 1, stating that, "[e]veryone agrees unworked holidays and vacation leave days are paid at straight time. Despite the agreement the pay entitlement for the remaining hours in the week is in dispute." Id. (quoting Arb. Op. at 15).

Here, Defendant is correct that the arbitrator engaged in interpretation within the scope of his authority. The arbitrator acknowledged the issues as framed by the parties, faithfully noted all provisions of the CBA considered relevant by both parties, and took a detailed look at how parts of the CBA fit together.

It does not matter that the arbitrator failed to discuss Article 9, § 2, and Article 10, § 1 in a level of detail satisfactory to Plaintiff. Of these provisions, the arbitrator stated that "[e]veryone agrees unworked holidays and vacation leave days are paid at straight time." Arb. Op. at 15. He also noted "[t]he fact that holidays and vacation leave are paid at straight time . . . ." Id. at 11. Both of these statements can only be references to the allegedly ignored provisions, which Plaintiff claims sets holiday and vacation leave pay at straight time. And speaking of the provisions in terms of whether they do or do not "negate the CBA provision" emphasized by Plaintiff shows that the arbitrator considered how all of the provisions fit together.

The arbitrator's phrasing is inartful, to be sure; the very issue facing the arbitrator was whether holidays and vacation leave always should be paid at straight time. But the context of the arbitrator's opinion shows quite clearly that, when he established the premise that "holidays and vacation leave days are paid at straight time," he was referring to the baseline rate at which holiday and vacation leave are normally paid (but for any overtime enhancement). See id. at 15 ("the pay entitlement for the remaining hours in the week is in dispute"). The arbitrator thus analyzed the allegedly ignored provisions as they related to other provisions, which the arbitrator

found controlling. Whether the arbitrator's awkward phrasing "was a slip of the pen or a slip in thought, it bears emphasizing that it was still . . . the contract language that he was trying to figure out." Mich. Family Res., 475 F.3d at 755.

Moreover, the Court can conceive of a hypothetical, more detailed explanation of the arbitrator's interpretation, which demonstrates that Plaintiff's is not the sole construction permitted by the CBA. There are two components of leave time at issue: vacation time and holiday time. The CBA contains provisions distinct to each.

Regarding vacation time, Plaintiff alleges that the arbitrator failed to consider Article 9, § 2, which states that vacation pay shall be computed "on the basis of the employee's regular bid job straight time hourly rate." (Emphasis added.) It is common knowledge that straight-time hourly rates typically form the basis of overtime rates. See also Art. 11, § 5 (setting overtime rate at 1.5x straight time rate). Accordingly, the CBA's provision that vacation pay be based on the straight time rate does not require, as Plaintiff suggests, that it always be paid at a straight time rate.

Holiday pay is another matter, but in the context of the agreement, together with ordinary principles of contract interpretation, the arbitrator's construction is still plausible. One provision of the CBA states that "regular full-time employees shall receive eight (8) hours holiday pay (at straight time) for each of the following holidays." Art. 10, § 1. In isolation, this seems unequivocal. However, when a general contractual provision arguably conflicts with a more specific provision on the same topic, the specific provision controls. See Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd., 525 F.3d 409, 420 (6th Cir. 2008) (citing "well-founded principles of contract law" and the Restatement (Second) of Contracts). Accordingly, Article 10, § 1 — a rule of general applicability, which sets the base rate of pay for all holidays — must

11

yield to the more specific provisions governing those holidays that happen to fall in a workweek longer than 40 hours. These more specific provisions are found in Article 10, § 2(d) ("Holidays not worked shall be considered as hours worked in computation of overtime and any other contractual benefits") and Article 11, § 5(a) ("If an employee is off work <u>any time</u> during their workweek on a contractual leave or benefit, such time will be counted as hours worked in computation of overtime." (Emphasis added)).[3]

Plaintiff makes an argument regarding the proper interpretation of the phrase "computation of overtime," which it states would avoid a conflict such as the one noted above.[4] But the arbitrator undisputedly considered Plaintiff's interpretation of this phrase and rejected it, offering thoughtful reasons for doing so. <u>See</u> Arb. Op. at 16 (citing Art. 11, § 5(a) ("<u>any time</u> [off work on contractual leave/benefit] will be counted as hours worked in <u>computation</u> of overtime" (emphasis added))). Plaintiff does not allege that the CBA's "computation of overtime" provisions were ignored, nor could it. Rather, it uses dictionary definitions to attack the arbitrator's interpretation of the phrase. Pl. Mot. at 17. Plaintiff may not be happy about the arbitrator's interpretation of that particular phrase, but the crux of Plaintiff's complaint is that the arbitrator ignored entirely different provisions of the CBA. Because the phrase "computation of

---

[3] It is worth restating that the preceding analysis of the CBA is not meant to substitute this Court's interpretation for that of the arbitrator. Rather, it is intended only to refute Plaintiff's claim that there is no possible interpretation of the CBA under which the arbitrator could reach his result without ignoring or nullifying parts of the contract. <u>See</u> <u>Mich. Family Res.</u>, 475 F.3d at 753 (improper arbitration award "make[s] implausible <u>any</u> contention that the arbitrator was construing the contract" (emphasis added)); <u>see also</u> <u>Brentwood Med. Assocs. v. United Mine Workers of Am.</u>, 396 F.3d 237, 241 (3d Cir. 2005) ("An award draws its essence from a collective bargaining agreement if its interpretation can in <u>any rational way</u> be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." (Emphasis in original)).

[4] Plaintiff argues that "computation of overtime" refers to the computation of whether the overtime <u>threshold</u> of 40 hours is met, rather than, for example, the computation of overtime hours and/or pay. Pl. Mot. at 18.

12

overtime" is amenable to the meaning that the arbitrator gave it, the Court will not second-guess this interpretation. Furthermore, Plaintiff's preferred interpretation of the phrase is, in the Court's opinion, tortured and not at all intuitive.

Accordingly, although the Court's hypothetical construction of the contract is just one example of how the arbitrator could have reasoned through the CBA, the existence of an "arguable interpretation" is all that is required. "[I]t is assuredly true that [courts] review outcomes, not opinions, while performing that exceedingly deferential task of considering whether to vacate an arbitration award." Mich. Family Res., 475 F.3d at 755.

The parties were permitted to submit supplemental briefing on a scenario in which a court reversed an arbitrator's award because he "ignored" a provision, notwithstanding the fact that the arbitrator explicitly, but briefly, acknowledged the provision (Dkt. 23). In its supplemental filing (Dkt. 24), Plaintiff offered one case, Sterling Fluid Sys. (USA) v. Chauffeurs, Teamsters & Helpers Local Union # 7, 144 F. App'x. 457 (6th Cir. 2005), for this proposition. There, employees invoked a clause in the CBA regarding subcontracting, while the employer invoked a broad "management rights" clause in defense of its actions. The arbitrator briefly acknowledged the employer's argument, but ultimately sided with the employees. A divided Sixth Circuit panel affirmed the district court's ruling, thus reversing the arbitration award, stating:

> The arbitrator saw the matter at hand as a simple case of subcontracting. <u>After briefly noting [employer] Sterling's argument that this was a plant closure case, the arbitrator stated, "I disagree," and never returned to the subject</u>. The arbitrator ignored Sterling's contention that the management rights clause authorized Sterling to close the foundry and relocate the molds and dies. In taking such a narrow approach, the arbitrator failed to consider the importance of Sterling's ability under the CBA to close the foundry and allocate the physical capital that remained in the foundry.

> Certainly, arbitrators have wide latitude in interpreting collective bargaining agreements. But in analyzing the Union's grievance, the arbitrator should have at least considered what the CBA had to say about Sterling's right to close the foundry. The arbitrator should not have viewed Sterling's decision to remove the molds and dies in a vacuum. That decision was part of Sterling's efforts to close the foundry.

Id. at 463 (emphasis added). Judge Clay dissented, stating that "the district court impermissibly substituted its judgment for that of the arbitrator," and "the majority repeats the district court's mistake." Id. (Clay, J., dissenting).

However, subsequent to Sterling Fluid, the Sixth Circuit "severely curtailed" a court's inquiry into an arbitrator's decision in Michigan Family Resources. Totes Isotoner Corp. v. Int'l Chem. Workers Union, 532 F.3d 405, 412 (6th Cir. 2008) (discussing the effect of Michigan Family Resources).

Indeed, Sterling Fluid cited a four-part test for determining whether an arbitrator's decision fails to draw its essence from the contract, Sterling Fluid, 144 F. App'x at 461; this test is traceable to Cement Divisions, National Gypsum Co. v. United Steelworkers, Local 135, 793 F.2d 759, 766 (6th Cir. 1986). Yet, Michigan Family Resources — following an exhaustive exploration of how Sixth Circuit case law had strayed from the Supreme Court's guidance — expressly overruled Cement Divisions' four-part test, instead fashioning a new test from the Supreme Court decisions Misco and Garvey. Mich. Family Res., 475 F.3d at 753. Accordingly, because it applied a since-overruled test, Sterling Fluids can fairly be said not to reflect the governing standard for appellate review of arbitration decisions in the Sixth Circuit.[5]

---

[5] Moreover, district courts are not bound to follow unpublished decisions such as Sterling Fluid. See United States v. Flores, 477 F.3d 431, 433-434 (6th Cir. 2007).

Furthermore, as shown by the arbitrator's two references to the allegedly "ignored" provisions of the CBA that are discussed above, even if Sterling Fluid was good law, the arbitrator here gave more consideration to the employer's arguments than the arbitrator in Sterling Fluid, who merely "disagree[d]" with the employer.

And finally, apparently lacking in Sterling Fluid, but present here, is an affirmative statement from the arbitrator that he did fully and carefully consider all arguments. See Arb. Op. at 4. Plaintiff is correct that giving weight to such a "boilerplate" statement could give arbitrators a silver bullet that helps immunize their decisions from review. However, Plaintiff cites no authority that courts should ignore such a statement. In fact, the contrary appears true. More recently than Sterling Fluid, the Sixth Circuit suggested that such a gap-filling statement provides more than is necessary in the absence of explicit analysis: "[A]rbitrators have no obligation to issue a written decision to justify their awards, and . . . vacating awards based on flawed chains of reasoning may well encourage arbitrators to 'play it safe by writing no supporting opinions.'" Mich. Family Res., 475 F.3d at 755-756 (quoting United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 598 (1960)). If an arbitrator can protect his decision from scrutiny by not issuing a written decision — so long as the contract will bear the ultimate result — it follows that a simple statement, averring that he engaged in interpretation, will have the same effect.

## IV. CONCLUSION

Here, the arbitrator was "arguably construing the contract." Accordingly, the Court will not substitute its judgment for that of the arbitrator regarding the proper construction of the contract. The arbitrator's decision, therefore, must be enforced. Plaintiff's motion to vacate the

arbitration award (Dkt. 13) is denied, and Defendant's motion for summary judgment (Dkt. 14) is granted.

Defendant's motion asked that the Court issue "an Order directing entry of judgment in its favor that [Plaintiff] should comply with the terms of the arbitration decision and the terms of the CBA, make the employees whole for any losses suffered, and award costs and attorney's fees to the [Defendant]." Def. Mot. at 16. Although the Court has now ruled that the arbitration decision should be enforced, the Court is uncertain whether additional issues need to be litigated in this action or whether a judgment may be entered presently. Therefore, if the parties are agreeable to the entry of a final judgment at this time, they shall submit a proposed judgment, approved by all parties as to form, on or before May 27, 2016. If they cannot so agree, they shall file a joint memorandum, by the same date, setting forth their respective positions of agreement and disagreement regarding what further issues require resolution.

SO ORDERED.


Dated: May 12, 2016         s/Mark A. Goldsmith
Detroit, Michigan           MARK A. GOLDSMITH
                            United States District Judge


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 12, 2016.

                                           s/Karri Sandusky
                                           Case Manager